Good morning, ladies and gentlemen. Welcome to the Ninth Circuit. Judges Bedia and I welcome our colleague, Judge Lucero, from the Tenth Circuit. Thank you for sitting with us. I don't know if the weather is better or worse, but it's a nice time to do your holiday shopping here. Similar, it's a little quieter there. Just a few housekeeping matters as to how I handle the calendar. I will call the cases in the order that they're on the calendar. Next to your designation, you have a time that has been allowed to your case. I will basically keep you to the time. If you are the appellant, your time next includes any rebuttal time that you wish to reserve as well. If you're the appellant, you're responsible for keeping track of your time. However, if you tell me when you come to the podium aspirationally how much time you would like to reserve for rebuttal, I'm looking right at the clock, so I'll try to remind you. Even though as advocates we respect this, you think that the time is all yours, we think it's all ours. And so if the time clock is out and you are in the middle of answering a question from the court, please continue to answer that question. And if my colleagues have additional questions, that would be the reason that we would go into overtime, because I want to make sure, since we have to decide your case, I want to make sure that all of our questions are answered prior to submitting the case. The clock counts down, and then it goes up. And when it starts going up, that doesn't mean I gave you extra time. It means you've moved into overtime. The first matter on calendar is Shooting King v. Stuffy Harrison, 18-16528. That matter was submitted on the briefs and will be submitted as of this date. The second matter on calendar for the first for argument is Roberta Sherry Kiefer v. Andrew M. Saul, case number 18-16019. Each side has 15 minutes. Good morning. Good morning. May it please the Court, Lawrence Rolfing on behalf of Roberta Kiefer. This is a Social Security case. We're at step five of the sequential evaluation process. The question is whether the Commissioner has sustained his burden of proof that there are a significant number of jobs in the national economy that Kiefer could perform despite her adverse medical vocational profile. The pertinent parts of the adverse medical profile is she's limited to sedentary work, which isn't a lot of jobs. Well, if she had a representative but not a lawyer at the hearing, and the representative had quite an impressive resume, and so since we're at step five and there weren't any objections entered here, and now why should we allow your client to challenge the vocational expert's testimony on appeal when she was represented before the agency by an individual who holds himself out as a Social Security expert and who qualifies under the Social Security Act? I mean, any time, you know, it's just pretty simple on appeal if you don't bring it up, and if she had been pro se, would she be able to bring it up here? And then if she has an expert, and so then you're asking us simply to, you know, you can hypothetically raise all those things, but you, in this case already in my review, went back one time already, right? Correct. For the earlier steps. No, for the same step. Okay. Yeah, the same step. And so now there's an objection, she has that expert, and now out of left field you want to raise things that the ALJ never got a chance to address, right? Well the first issue that I think we get in the door with is that Dr. McCaskill, Mr. McCaskill, I'm not sure he's an expert in Social Security law, he might be a former vocational expert, was the reasoning level one. What kind of, are these jobs reasoning level one and reasoning level two? And the ALJ addressed that, and the vocational expert said, well simple one and two step, they're unskilled, it's all the same thing to me. And that's not an adequate differentiation of the DOT under controlling precedent under... But you're not answering Judge Callahan's question. Right. She didn't ask you about errors that the ALJ may or may not have made based on the vocational expert's testimony. She asked you about the waiver question. So LaMere gets us in the door. And so we've already knocked out two of the three occupations that are identified, so we're really focused on one occupation. And so under LaMalga, a non-precedential unpublished opinion from this court suggests that the waiver rules are different when we're talking about harmless error as opposed to error in the first instance, which was what Shaibi was talking about, which Shaibi attacked the ALJ's numbers decision frontally without having the lever of having knocked out two-thirds of the identified occupations. Okay. So let's just take this. So I'm taking you that you're not aware of any published cases where the court has entertained arguments not advanced by a non-attorney representative before the court. You have no published case. There are no published cases. Well, right. The only published cases that address this particular issue of a non-attorney representative are McLeod, which allowed the claimant to introduce VA evidence in court for the first time because the claimant was not represented by an attorney, and Chowdhury, where the claimant tried to do the same thing but was represented by an attorney, and this court said no. It's waived because you were represented by counsel. There's a difference, right? So those cases address the ALJ's duty to make sure that the record is factually developed. And in those cases, the court noted that the ALJ's duty to do so is heightened in a sense when the claimant is not represented. But that's different from the circumstance we have here where our court's precedent says that the ALJ can rely on the vocational expert's testimony, that the vocational expert's qualifications provide the foundation for that testimony, and that that testimony is, in fact, substantial evidence. So you have a circumstance where the ALJ is entitled to rely on that testimony, and so is building the factual record for review. But there's no objection to any of it. And why is that not a waiver? It's clear that the DOT, the selected characteristics in the DOT issues are not waived under Lemire and Taylor. And so when we compare Bayless, which is the case I believe that Your Honor is referring to... And Bystic as well. Well, Bystic, the attorney did nothing. But the vocational expert's testimony may count as substantial evidence even without supporting data. Right. Because there was nothing in the record to permit the court, the majority of the Supreme Court, to permit the court to infer that there was anything wrong with the vocational expert's testimony. But there's nothing here. So before the ALJ, there was no objection whatsoever to any of this testimony. There was no argument. There was no counter evidence presented. The ALJ, following our precedent, was allowed to rely on that evidence as substantial evidence for job numbers. Then, for the first time on appeal at the district court, counsel comes forward with an interpretation of documents that he asked the district court to take judicial notice of. So you've just whipsawed the ALJ. They've had no notice of this, no opportunity to address it in the first instance. And the district court and this court are not fact finders. We're reviewing an administrative record. None of this has been developed in the administrative record. Why is that not a classic waiver? It's not a waiver because the ALJ still has a duty. The ALJ has a duty of production at step five, and the ALJ still has the duty to fully and fairly develop the record. The Occupation Outlook Handbook, which is the primary source that we're relying on in the district court and here, is on the list of administrative notice. Now, Social Security Ruling 004P says the DOT is important and everything else is not so much important. But if we look at 004P under the prism of Kaiser versus Wilkie, that interpretation of the administrative notice regulation has to go away. It doesn't survive Kaiser. It doesn't survive Kaiser because it creates a hierarchy that the regulation doesn't even imply, even if you ‑‑ But all these assumptions that you make are not necessarily ‑‑ the assumptions that you put on the ALJ, we don't know what the ALJ was thinking because no one objected. So you're assuming errors that the ALJ made, but there was no objection. There is no valid objection to vocational expert's testimony that's spurious. There is an objection. I'm sorry, go ahead, Your Honor. Even if we buy your argument that there is no waiver, that their burden is on the commissioner to advance all this evidence you wanted to advance, what evidence would you seek? What evidence would you have us, as a matter of law, pronounce as to be entered? That the occupational outlook is as a source of administrative notice. Because the data does show, albeit in a pretty, I won't say defective, but pretty faulted manner, an aggregation of data that is jumbled and then thrown up in the air. But I don't understand from your briefs what you would have us order. What I would have this court order is to bring ‑‑ How would it read? Yeah. What this court should order is to bring this court in line with what the Seventh Circuit said in Chavez, what the First Circuit said in Purdy, is that the equal distribution method is fatally flawed. And when the vocational expert doesn't use ‑‑ Before we even get there, we don't even know that that's the method that was used, because there was no testimony or evidence before the ALJ, the appropriate fact finder, as to the methodology the vocational expert employed. And the ALJ was not required to elicit that testimony, and nobody objected to it or cross‑examined the expert or attempted to establish that the methodology was flawed. The only basis for us to conclude that the methodology was flawed is counsel's argument on appeal. There's no evidence in the administrative record for us to rely upon. So we just make it up out of whole cloth and then decide that because she wasn't represented by an attorney, we remanded to the ALJ. But if she had an attorney, we wouldn't. So we create, in effect, a class of cases where there's an automatic remand as long as you lie in the weeds, you have a qualified non‑attorney representative, you don't object to the vocational expert's testimony, and then object to it the first time at the district court. I mean, essentially, that's what you're asking us to create. Well, this court doesn't create any distinction at all when it comes to DOT error, when the claimant doesn't raise a conflict with the DOT. Those cases get remanded all the time. Because Social Security Reg. 004 says that the ALJ has an obligation to investigate any vocational expert's testimony and the DOT. And our case law is clear that the ALJ is required to do that, but not with other sources. In this course, first precedential address of the administrative notice issue is Terry v. Sullivan. And Terry said that relying on the commissioner, the secretary in that case, the commissioner's own resources is a reasonable way to defeat vocational expert testimony. And Terry is the first articulation on the subject. And Terry, we need to reconcile the administrative notice regulation with Terry. Terry said, they're the commissioner's own resources, we're going to look at it and we're going to remand this case because the vocational expert has failed to consider the distinction between skilled and semi‑skilled work. In this case, the Occupational Outlook Handbook identifies all three occupational groups, production workers, fillers, and packers, as requiring moderate term on‑the‑job training. Well, let's assume that we get you past the waiver, but how do we treat the vocational expert's testimony that in addition to the jobs referenced by the ALJ, there also existed 489,800 jobs as an auto table worker in the national economy eroded by 60%? Eroded by 60% because of standing, but we addressed that on page 31 of the ‑‑ But why wouldn't that just be sufficient evidence? Why isn't that sufficient evidence? Well, under CONUT, the court examines the reasons that the ALJ articulated, not the reasons that the ALJ might have articulated. But the ALJ stated that she was fully adopting vocational expert's testimony, which would include the auto table workers, and also when she listed the employment, she said, such as. It wasn't exhaustive. So why is that particular job excluded? Because it requires inspectors, testers, sorters, samplers, and wearers require moderate term on‑the‑job training. That is the typical way in which inspectors are performed in the national economy. That's not my opinion. That's the Occupation Outlook handbook. And that's number five on the list of matters of administrative notice. If it may please the Court, the number of jobs ‑‑ Do you want to save me time for rebuttal? Yeah. I just want to finish the sentence. The number of jobs in the national economy is a matter of administrative notice. That's what the administrative notice regulation says. And when a vocational expert departs wildly from matters subject to administrative notice, the Court shouldn't affirm. Because BSTEC says that the proper role of the vocational expert is to take their local experience and extrapolate to the national economy by a reliable methodology. And when I can go to the occupational employment statistics and boom, all three of the occupational groups are represented by the full number of jobs recited by the vocational expert, that isn't substantial evidence. No one believes that there are 200,000 eyedropper assemblers or eyeglass assemblers or 400,000 table workers. The testimony is just not substantial. And these are all arguments that would have been perfectly valid before the ALJ and should have been raised there. And as BSTEC ‑‑ I'm sorry. As this Court noted in Shaibi and the Seventh Circuit in Britain, every time a representative, whether attorney or nonattorney representative, goes into a hearing before an administrative law judge, they have no idea what the vocational expert is going to say. None. But Shaibi said that they don't have to be prepared with different numbers. All they have to do is just raise it in some fashion. Just raise a question about it to preserve it. Well, there was ‑‑ he did raise the issue of one‑and‑two‑step instructions, the distinction Zavalin and Rounds versus Commissioner raised. And so he did raise some issue as to the substantiality of the vocational expert's testimony. I would like to reserve the last 55 seconds. Okay. And Judge Kelley, can I ask him one more question? Sure. I'll give you one minute for rebuttal. We'll give you the additional time. Answering Judge Beatty's question, I'll give you one minute for rebuttal. How did your client end up with the nonlawyer representative? Is this a person she assigned to them that the claimant decides if they want to retain a lawyer or somebody else? Is that correct? I think the record is clear that she volitionally hired Mr. McCaskill, that it was her decision. There's nothing in the regulations that directs claimants to any particular person. It's a very competitive field filled with nonattorneys and attorney representatives. And we have an individual who's limited to one- and two-step instructions. And given her minimal faculties for complex decisions, she hired Dr. McCaskill of her own. And are the nonattorney representatives, are they paid on a contingency fee as an attorney might be? Or they could be? They're typically paid on a contingency fee basis under the expedited fee process as are attorneys. The act and the regulations and the commissioner's subregulatory promulgations make no distinction in terms of fees to attorneys or nonattorney representatives. In fact, I think it would be a fair assumption, given the retainer agreement that's in this record, that Dr. McCaskill was retained on the same financial terms as would any lawyer representing claimants before the agency. I'm still giving you a minute on rebuttal, but just so that I understand, if she had had a lawyer, she'd be doomed? It'd be waived? She'd be filing a malpractice lawsuit, yeah. Well, but it would be waived. You can see that the case law is pretty clear on that. I think Shaibia is admin or clear. Okay. And the nonattorney representatives are required to carry liability insurance as well. So she has a claim, potentially, under your theory, that she could sue a lawyer, she could sue the nonattorney representative? I don't know what the standard of care would be, but certainly. Yes. Okay. We'll see you back shortly. Thank you. Thank you. Good morning. Good morning, Your Honors. My name is Shea Bond, and I represent the Commissioner of Social Security, Andrew Saul, on this matter. I think you've sort of seen our focus, so perhaps you can jump right in and address what we're talking about. So it's the Commissioner's position that a waiver or forfeiture rule should apply to this case. Although Shaibia involved the representative who was an attorney, the nonattorney representative representing the claimant in this case had lots of experience. He had lots of experience in the very issue that's being presented to this court, which is vocational in nature. Well, what's the law if she had represented herself and it happened exactly the same? Would she be able to raise that for the first time in appeal? My understanding would be yes. There's a heightened duty of care that... Well, is there a specific case? Because in a lot of things, pro ses are held to the same. They don't get to just come up with entirely new arguments on appeal. Is there a case? I mean, I'm unaware of a case. I think Shaibia... So you're inferring on that? I assume so. I mean, if it were an instance where someone decides to come up with their pro se and they come up with a completely new argument, is there a case that prevents us from imposing waiver on a pro se? There isn't a case that jumps to mind, Your Honor. It's more flexible for pro ses, people representing themselves. Again, I think it's because the ALJ has the heightened duty of care in those situations. And so you don't want to have someone who is unrepresented at the hearing necessarily disadvantaged later on if not all issues were raised. But we don't have that situation here. The situation that's presented to this... But there's no case exactly on this type of person either, right? No, not for an unrepresented claimant. Oh, I'm sorry, not for a claimant being... I'm sorry, I didn't mean to interrupt. Whatever you call a qualified representative. Right, like a specially qualified representative. There isn't anything directly on point that I am aware of. However, if we're looking to the principles, I think, that underpin SHIA-B in cases like SHIA-B, like Menal, it's the fact that we don't want someone who's representing themselves at a hearing necessarily being disadvantaged later on if the issues aren't fully developed at the hearing. But here we had the claimant was... Should we be making a distinction between counsel and specially qualified representatives? And do you know of any cases that speak to that issue? I am unaware of any cases with that specific designation, or making a distinction or a similarity between those two. But I think this court could extend SHIA-B to situations involving these particular class of representatives. It's not necessary. I think here you have Dr. McCaskill himself has proven up as a very competent representative in this area, but... Well, wasn't he a vocational expert? At a point, yes. And he's had certifications in being an expert. Not only in being a vocational expert, but in vocational counseling and rehabilitation, specifically. Do you concede that... Not concede. That's a strong word. But do you acknowledge that the ALJ does have a special obligation to introduce evidence of this type, even if it isn't raised? Vocational, you mean, in nature? So the only obligation that's on the commissioner is to support a finding of significant numbers of jobs that the claimant can do. And so we have that burden. That burden was satisfied here by the introduction of testimony from the vocational expert. So once that evidence has been introduced into the record, it constitutes substantial evidence under Baylis, and Yaztek has basically reaffirmed that. But that's the issue here, right? Counsel says this is not substantial evidence. He doesn't use the word speculation, but he uses the word aggregation of data that's senseless. Well, under Baylis, the vocational expert's testimony alone without supporting documentation is substantial evidence. And of course, the problem I think this Court has identified here is that there was no questions posed to the vocational expert to question the substantiality of the testimony. Okay, but the vocational, Kiefer's argument, I think, is that the vocational expert job numbers are overbroad because they exactly match the Bureau of Labor Statistics May 2014 occupational group reports. How do you respond to that? If we assume, let's just assume we get past the waiver, how do you respond to that? Well, my first response would be that the ultimate numbers that the vocational expert came up with, say particularly with the final assembler job, wasn't the similar number. It was actually a lower number. So we don't have that similarity. And we don't have evidence in the record showing that the vocational expert actually relied on those source materials for the testimony. And again, that's getting back to the major problem here is that if there were questions about what sources did the vocational expert use to derive these numbers that should have been developed at the hearing. So what we do have at the hearing is the vocational expert saying that he had relied on his experience and expertise in doing work for employers and I think surveys or something to that effect. So that's what we have as the evidentiary basis for the vocational expert's testimony. The fact that counsel has after the fact and for the first time in federal court kind of mined these online resources for contrary information doesn't validate that information. And I'm actually unsure whether Mr. Rolfing's calculations are even correct or if the representations are correct or if the math is correct. I agree that he's done some computations that have with certain inputs have resulted in a certain end figure but we really don't know if that's accurate because it's not confirmed by any kind of vocational expert. How is that evidence ever confirmed? You saw the case, you have a speculation or testimony that there are so many hundred thousand jobs of dance hall hostess positions available. I mean, it just defies any imagination that there's even that many dance halls in America. So the Farias case to which you're referring, I don't believe that case survives, Shaibi, because it's, first of all, it's an unpublished case but then Shaibi comes out later and the question of kind of like the plausibility of these job numbers came out in Shaibi. And so in that case, the jobs that were talked about, particularly at the hearing, were these tobacco leaf tire jobs. And so the numbers presented there were 5,000 in California, I think 48,000 in the nation. And so Judge Berzon- We now have most eyeglasses coming out of China, correct? Correct, but we don't know what the, I don't, I mean, I personally don't know what the eyeglass business is in the California but again, this issue came out in Shaibi. And Judge Berzon- Well, I'm counting here of all of us here, except Judge Beatty, we're wearing eyeglasses. So I don't know, someone's working on those. Right, and I mean, you know, you have lens crafters, you have the optometrist department- I come out of London. I don't know where mine came from. But to get back to this particular idea of like, what does common sense dictate about the, I guess, the prevalence of these jobs in the country in a particular state, again, Shaibi, Judge Berzon during the hearing, I think actually called the leaf tire jobs is perceived as being silly. But that did not prevent the Shaibi court from applying the forfeiture rules in a case where even, you know, after the fact, this could be an interesting argument, but she said, this is really what needs to be addressed at the hearing because the court is not a fact finder. So it's, I guess, is it your position that the question that I asked you, that the vocational, to raise these issues, the vocational expert should have been asked at the hearing in front of the ALJ, well, okay, you've testified to these numbers, but I noticed that your numbers exactly match the Bureau of Labor Statistics of May 2014 on occupational group reports. Is that correct? And then the vocational expert would have either said, and if the vocational expert said yes, and that's how I came to my conclusion, that would be a problem of the sufficiency of the evidence. Possibly. Possibly. But if he said no, or she said no, and said, well, yeah, it does match in some, but here is what I'm also looking at, and then we would better be able to evaluate sufficiency and it wouldn't be a waiver situation. Correct, because the issue would have been broached at the administrative hearing. And then I think Beaztech goes into this somewhat in describing that it's, again, you don't have to have a lot of information on hand to question a vocational expert. It's sufficient to ask those types of questions. The last classification of these job positions was made in 1977, correct? It's possible. I know that DOT, parts of it had updated in the 90s, but I don't know for these specific jobs. Let's assume for the purpose of my question, it's 77. How would the testimony have differed if the question had been raised? I guess I'm not exactly... If there had been objection on that basis, as there is now, how would that have been addressed below? Well, at the administrative level, the question would have been asked and answered. And then at that point, getting back... How would it have been answered? Oh, I don't... I mean, that's all speculation at this point. I don't know how the vocational expert would have answered the question. But the point is that the question, if it had been answered, could have been explored at that time. And Beaztech states that that's the appropriate time to be asking these questions to develop the record. Well, okay, let's assume that... Let's just assume that we say it wasn't waived. Please tell me how I would write an opinion or a disposition as to the sufficiency of the evidence. Why is the evidence sufficient? And what is the case law that supports it? Specifically for the job numbers issue, we're sticking with the job numbers issue. All right, step five. Because you have the burden at step five, right? Right. So if the issue isn't waived, the evidence that's... The vocational expert's testimony is still substantial evidence based on Bayless because the vocational expert does not need to justify the testimony with underlying pinning data. The testimony alone is substantial evidence. If the claimant comes after the fact with a different interpretation, right now all we have is speculation that those numbers are valid. We don't have a competent cooperation at this point that Mr. Wolfing's job numbers developed after the fact. Are accurate or even relevant here. So it's speculative even that the alternative numbers prove up that there was a reason to question that the vocational expert's existing testimony. And BIS Tech, I would say, supports that as well. The fact that the vocational expert's testimony at the hearing alone can constitute substantial evidence even without an underlying basis. So I want to go back to the waiver issue for a moment, Judge Callahan asked you some questions about what should be the rule with a pro se claimant. And I wasn't clear on your answer. Are there any circumstances in the commissioner's view where a pro se claimant can waive an issue if they don't raise it before the ALJ? Well, sure. There are circumstances that could happen. I'm not saying that's an absolute preclusion to apply waiver or forfeiture when a claimant is unrepresented. But I think that the court is definitely more lenient in those situations. So it's not an absolute preclusion. But typically the rule is that pro se litigants are held to the same standard as represented litigants. If they choose to represent themselves in court for whatever reason, they're going to have to abide by the rules. And all I can see is a carve out for an issue with respect to a social security disability determination in those two cases. McLeod and Chaudhary. And in those cases, the court specifically addressed how significant that factual information is with a social security disability determination and the ALJ's duty to develop the record. But I haven't seen any other citation to any authority that suggests that outside of that context, a pro se litigant doesn't waive issues that they don't raise before the ALJ. Again, Your Honor, I can't think of a published case that's coming to mind. I know I can say that courts have applied waiver to, or forfeiture to a situation where a claimant was pro se. And again, I think it goes back to an ALJ's duty to develop a record in situations where the claimant is unrepresented. But the ALJ did that here. The ALJ did that by developing the record  And then the situations in McLeod and Chaudhary involved a very specialized classification of evidence. It's the VA evidence that this court has held is held to a higher standard for ALJs, whether to give it great weight or not. So that's a classification of evidence that I guess carries a different value or weight in this court's mind. And thank you. You're right. I misspoke. I said a social security disability determination. It's actually a VA disability determination. Correct, VA disability determination. And so under cases like McCarty, that's held to a higher standard. And so I think it would be understandable for the court to say that an unrepresented claimant or a claimant who's represented by a lay person. And in those cases, there's no evidence that the representation was someone who's like a Dr. McCaskill's caliber, who has been certified by the agency to be an expert in social security disability evaluation. Given the substantial questions about adequacy of evidence that would remain if there is not waiver, would you say in authoring an opinion in this case that you would best leave it to waiver and not comment further on whether the ALJ has met its burden under step five? Well, I think if the court were to decide that waiver was appropriate, that would end the analysis. There wouldn't be any need to go into the merits challenges would be my statement. Thank you. Thank you very much. You have one minute. Thank you, Your Honor. The reason that we treat unrepresented claimants differently is because 405G sentence six says that new and material evidence can come in and an unrepresented claimant has good cause. I didn't know, the judge didn't develop the record and a represented claimant doesn't have that excuse. And so that's the foundation for treating pro se's differently than represented claimants. And that extends under all of the cases that preceded McLeod that talked about the heightened duty where the claimant is, is two factors that are important. Heightened duty exists when the claimant is unrepresented and also when the claimant suffers from a mental impairment. Do you know of any cases that distinguish between counseled and specially counseled cases? There's no case that actually addresses that because McLeod didn't address the classification at all. Thank you. I don't want to run into your time more than that, but you have, I think you're out of time, but maybe judge- Can I just finish one sentence, Your Honor? I'll give you 10 seconds here. Thank you. The preferred method for establishing the number of jobs is administrative notice. 404-1566-D says the commissioner takes administrative notice of numbers of jobs in national economy. And so when a claimant comes in and presents occupational employment statistics numbers, the claimant is actually submitting the evidence in the manner that the commissioner and the regulations request. Very long sentence, but I think it was one. I'm not sure with the and. Liberal use of commas in my mind. Thank you both for your argument. This matter will stand submitted. Thank you, Judge.
judges: Lucero, Callahan, Bade